## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| PGHC Holdings, Inc., *et al.*, | Case No. 18-12537 (MFW) |
| Debtors.[1] | Joint Administration Requested |
| | Re: D.I. 20, 150, 194 |

## ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS, AND ENCUMBRANCES; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING CERTAIN RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] dated November 5, 2018 of the above-captioned debtors and debtors-in-possession (the "Debtors") for, *inter alia*, entry of an order (this "Order") (A) approving the sale (the "Sale") of substantially all of the Debtors' assets (the "Assets") free and clear of all Liens (as defined in the Asset Purchase Agreement (defined below)), security interests, other interests, claims and encumbrances thereon and there against except for Permitted Liens (as defined in the Asset Purchase Agreement (defined below)) (collectively, the "Encumbrances and Interests"), pursuant to that certain Asset Purchase Agreement, as attached to the Motion and as subsequently revised [D.I. 194] (the "Asset Purchase Agreement" or the "Stalking Horse Purchase Agreement"), by and among the Debtors

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal EIN, are as follows: PGHC Holdings, Inc. (4262); Papa Gino's Holdings Corp. (6681); Papa Gino's, Inc. (1264); Papa Gino's Franchising Corp. (2690); Papa Gino's/D'Angelo Card Services, Inc. (0621); D'Angelo's Sandwich Shops, Inc. (7947); Progressive Food, Inc. (6224); D'Angelo Franchising Corporation (8398); and Delops, Inc. (7945). The Debtors' mailing address is 600 Providence Highway, Dedham, MA 02026.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Stalking Horse Purchase Agreement (hereinafter defined), as applicable.

and WC Purchaser LLC, (the "Buyer" or "Stalking Horse"), the designee for the credit bid of the Debtors' prepetition first lien lender and DIP lender, WC Financeco A LLC and sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. § § 101 et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy procedure (the "Bankruptcy Rules"), and Local Rule 6004-1; (B) authorizing the assumption and assignment of certain executory contracts and unexpired leases (the "Assigned Contracts") identified by the Debtors and more fully described in the Asset Purchase Agreement pursuant to the Designation Procedures set forth in the Bidding Procedures Order (as defined below) and herein; and (C) granting certain related relief; and the Debtors having determined that the highest and otherwise best offer for the Sale of the Assets was made by the Stalking Horse in the form of the Stalking Horse Purchase Agreement; and the Debtors having received no other bids prior to the deadlines ordered by this Court in the Bidding Procedures Order; and the Court having held a hearing on January 23, 2019 (the "Sale Hearing") to approve the Asset Purchase Agreement; and the Court having reviewed and considered (i) the Motion, (ii) the objections thereto, if any, (iii) the arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing, and (iv) the record of these chapter 11 cases; and the Court finding that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors and other parties in interest; and after due deliberation thereon; and good cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[3]

A.     **Jurisdiction and Venue**. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § § 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C.

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

§ 157(b)(2)(a).  Venue of these cases and the Motion in this Court is proper under 28 U.S.C. § § 1408 and 1409.

B.     **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion and granted by this Order are sections 105(a), 363 and 365, 503 and 507 of the Bankruptcy Code, Rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules, and Local Rule 6004-1.

C.     **Petition Date**.  On November 5, 2018 (the "Petition Date"), the Debtors each commenced a case (these "Chapter 11 Cases") by filing a petition for relief under chapter 11 of the Bankruptcy Code.

D.     **Entry of Bidding Procedures Order**.  On November 30, 2018, this Court entered an order (the "Bidding Procedures Order") [D.I. 150], *inter alia*, (A) establishing bidding and auction procedures (the "Bidding Procedures"); (B) approving the proposed expense reimbursement and break-up fee (the "Bid Protections") to the Stalking Horse in accordance with the Stalking Horse Purchase Agreement; (C) scheduling an auction (the "Auction") and sale hearing (the "Sale Hearing") for the Sale of the Assets; (D) permitting credit bidding pursuant to Section 363(k) of the Bankruptcy Code for the Stalking Horse; (E) establishing procedures for noticing and determining cure amounts (the "Cure Amounts"); (F) approving the form and manner of notice of all procedures, protections, schedules and agreements; and (G) granting certain related relief.

E.     **Compliance with Bidding Procedures Order**.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, (ii) the representations made in the Sale Motion and on the record at the Sale Hearing, and (iii) the record in these Chapter 11 Cases, the Debtors have marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order.  The Debtors and their professionals have

actively and sufficiently marketed the Assets, both prior to and after the Petition Date, and have afforded all potential purchasers a full, fair and reasonable opportunity to perform due diligence on the Debtors and the Assets and make higher and better offers.

F.    **Notice**.  As evidenced by the affidavits of service and publication previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of the Motion, the Bid Deadline, the Auction, the Sale Hearing, the Sale, the assumption and assignment procedures for the Assigned Contracts (including the objection deadline with respect to any Cure Amount and the ability of the Buyer to provide adequate assurance of future performance) and the assumption and assignment of the Assigned Contracts and the Cure Amounts pursuant to the Designation Procedures has been provided in accordance with Sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 and in compliance with the Bidding Procedures Order, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Bid Deadline, the Auction, the Sale Hearing, the Sale, or the assumption and assignment of the Assigned Contracts or the Cure Amounts pursuant to the Designation Procedures is or shall be required.

G.    **Corporate Authority**.  Subject to entry of this Order, each of the Debtors (i) has full corporate power and authority to execute, deliver and perform all obligations under the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale of the Assets by the Debtors has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, (iii) has taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation by the

Debtors of the transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Debtors to consummate such transactions.

H.    **Opportunity to Object**.  A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including; (i) the United States Trustee for the District of Delaware; (ii) counsel to the Debtors' secured lenders; (iii) the creditors listed on the Debtors' consolidated list of thirty (30) largest unsecured creditors, as filed with the Debtors' chapter 11 petitions, or any official committee appointed in the Debtors' cases; (iv) all parties asserting a security interest in the Purchased Assets, including holders of Encumbrances and Interests in the Purchased Assets, to the extent any such interest is reasonably known to the Debtors; (v) applicable federal, state, county and city tax and regulatory authorities; (vi) all entities known to have expressed a written interest in a transaction with respect to the Purchased Assets or that have been identified by the Debtors or their advisors as a potential purchaser of the Purchased Assets; (vii) local and state environmental authorities and the Environmental Protection Agency; (viii) the Pension Benefit Guaranty Corporation; (ix) local, state and federal authorities and agencies that have issued licenses or permits to the Debtors with respect to the operation and use of the Purchased Assets; (x) each counterparty to the Debtors' Contracts and Leases; and (xi) all parties requesting notice pursuant to Bankruptcy Rule 2002.

I.    **Sale in Best Interest**.  Consummation of the Sale of the Assets at this time is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

J.    **Business Justification**.  Sound business reasons exist for the Sale.  Entry into the Asset Purchase Agreement constitutes the exercise of sound business judgment by each of the

Debtors, and such acts are in the best interests of each Debtor, their respective estates, and all parties in interest.  The Court finds that each Debtor has articulated good and sufficient business reasons justifying the Sale.  Such business reasons include, but are not limited to, the following: (i) the Asset Purchase Agreement constitutes the highest and best offer for the Assets; (ii) the Asset Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Assets on a going concern basis and avoid decline and devaluation of the Assets; (iii) the Asset Purchase Agreement and closing therein will provide the highest recovery for the Debtors, their respective estates, and other parties in interest; and (iv) any plan would not have likely yielded as favorable an economic result.

K.      **Arm's-Length Sale**.  The Asset Purchase Agreement was negotiated, proposed and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under Section 363(n) of the Bankruptcy Code or any other remedy for rescission or avoidance under law or equity.

L.      **Good Faith Purchaser**.  The Buyer is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under Section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law.  The Buyer has been and will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Asset Purchase Agreement.

M.      **Consideration**.  The consideration provided by the Buyer for the Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and

fair consideration under the Bankruptcy Code and under the laws of the United States and any state, territory, possession or the District of Columbia.

N.      **Free and Clear**.   The Debtors may sell the Assets free and clear of all Encumbrances and Interests (other than Permitted Liens) because, with respect to each creditor asserting a lien, claim, encumbrance, or interest, one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.    Those holders of Encumbrances and Interests who did not object or withdrew objections to the Sale are deemed to have consented to the Sale pursuant to Section 363(f)(2) of the Bankruptcy Code.  Those holders of Encumbrances and Interests who did object fall within one or more of the other subsections of Section 363(f) Bankruptcy Code.

O.      **Assumption of Designated Executory Contracts and Unexpired Leases**.  The (i) transfer by the Debtors of the Assets to the Buyer or a designee and (ii) assumption by the Debtors and assignment to the Buyer or its designee of the Assigned Contracts, will not subject the Buyer to any liability whatsoever prior to the Closing Date (defined below) or by reason of such transfer under the laws of the United States or any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust, successor or transferee liability.  The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts to the Buyer or its designee in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates, and their creditors.  The Assigned Contracts being assumed by the Debtors and assigned to the Buyer or its designee are an integral part of the Assets being purchased by the Buyer and, accordingly,

such assumption by the Debtors and assignment to the Buyer or its designee of the Assigned Contracts is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair discrimination.

P.    **Cure/Adequate Assurance**.  The Debtors or the Buyer, in accordance with the Asset Purchase Agreement, has (i) cured, or has provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assigned Contracts, within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code, and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assigned Contracts within the meaning of Section 365(b)(1)(B) of the Bankruptcy Code.  The Buyer has provided adequate assurance of future performance of and under the Assigned Contracts within the meaning of Section 365(b)(1)(C) of the Bankruptcy Code.

Q.    **Prompt Consummation**.  The Sale of the Assets must be approved and consummated promptly in order to preserve the value of the Assets.  Therefore, time is of the essence in consummating the Sale, and the Debtors and the Buyer intend to close the Sale as soon as possible.

R.    **No Intentional Fraudulent Transfer**.  The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

S.    **Buyer Not an Insider and No Successor Liability**.  Immediately prior to the Closing Date, the Buyer was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or

stockholders existed between the Buyer and the Debtors.  Pursuant to the Asset Purchase Agreement, Buyer is not purchasing all of the Debtors' assets in that the Buyer is not purchasing any of the Excluded Assets, and the Buyer is not holding itself out to the public as a continuation of the Debtors.  The Sale does not amount to a consolidation, merger or de facto merger of Buyer and the Debtors and/or the Debtors' estates, there is not substantial continuity between Buyer and the Debtors, there is no continuity of enterprise between the Debtors and the Buyer, the Buyer is not a mere continuation of the Debtors or the Debtors' estates, and the Buyer does not constitute a successor to the Debtors or the Debtors' estates.

T.    **Legal, Valid Transfer**.  Subject to the terms and conditions set forth in the Asset Purchase Agreement, the transfer of the Assets to the Buyer will be a legal, valid, and effective transfer of the Assets, and will vest Buyer with all rights, title, and interests of the Debtors to the Assets free and clear of all Encumbrances and Interests, except for Permitted Liens.

U.    **Asset Purchase Agreement Not Modified**.  The terms of the Asset Purchase Agreement, including any amendments, supplements, and modifications thereto, are fair and reasonable in all respects.

V.    **Not a _Sub Rosa_ Plan**.  The Sale does not constitute a _sub rosa_ chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Sale neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates a liquidating plan of reorganization for the Debtors.

W.    The relief requested in the Motion may and should be granted.

It is therefore **ORDERED, ADJUDGED, AND DECREED EFFECTIVE IMMEDIATELY THAT:**

**General Provisions**

1.    The Motion is GRANTED and APPROVED as set forth herein.

2.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice.

**Approval of the Sale of the Assets**

3.      The Asset Purchase Agreement, attached hereto as <u>Exhibit A</u>, including any amendments, supplements and modifications thereto, and all of the terms and conditions therein, is hereby approved.

4.      Pursuant to Section 363(b) of the Bankruptcy Code, the Sale of the Assets to the Buyer free and clear of all Encumbrances and Interests (except Permitted Liens), and the transactions contemplated thereby, are approved.

5.      Except as otherwise specifically provided in the Asset Purchase Agreement, to the greatest extent permitted under applicable law, the Buyer shall not be liable for any Claims (as defined in Section 101 of the Bankruptcy Code) against the Debtors or any of their predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character (including, without limitation, any products liability Claims with respect to any inventory or other assets sold, shipped or delivered prior to the Closing Date), whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or their Business or any obligations of or Claims against the Debtors arising at any time, except for the Assumed Liabilities, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Assets prior to the Closing Date.

6.      The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyer in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided

herein by this Order to consummate the Sale shall not affect the validity of the Sale to the Buyer. The Buyer is a purchaser in good faith of the Assets, and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

7.       As a good faith purchaser of the Assets, the Buyer has not entered into an agreement with any other potential bidders at the Sale, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Assets, and therefore neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to Section 363(n) of the Bankruptcy Code.

**Sale and Transfer of Assets**

8.       Pursuant to Section 363(b) of the Bankruptcy Code, the Debtors are hereby authorized to sell the Assets to the Buyer and consummate the Sale in accordance with and subject to the terms and conditions of the Asset Purchase Agreement, and to transfer and assign all rights, title and interests (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the Asset Purchase Agreement, and are further authorized to execute and deliver, and are empowered to perform under, consummate and implement, the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, including without limitation the related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by the Buyer for the purposes of assigning, transferring, granting, conveying and conferring to the Buyer or reducing to possession, the Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Asset Purchase Agreement.

9. Pursuant to Section 363(b) and (f) of the Bankruptcy Code, the Assets shall be transferred to the Buyer upon consummation of the Asset Purchase Agreement (the "Closing Date") free and clear of all Encumbrances and Interests (except the Assumed Liabilities and Permitted Liens) of any kind or nature whatsoever including, but not limited to, Encumbrances and Interests in respect of the following: (1) any labor agreements; (2) all mortgages, deeds of trust and security interests; (3) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (4) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (5) any bulk sales or similar law; (6) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (7) any theories of successor or products liability; (8) any Environmental Laws (as defined in the Asset Purchase Agreement); and (9) any claims arising under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499(a) *et seq.*, or similar state law. Nothing in this order shall be construed to: (1) release, nullify, or enjoin a Governmental

Authority from enforcing any Environmental Laws under which a purchaser of property would otherwise be liable as a current owner or operator after the date of purchase, which is not dischargeable under the provisions of the Bankruptcy Code or other applicable laws, or (2) permit, in any circumstances, a Governmental Authority to obtain from the Buyer penalties arising under Environmental Laws prior to the Closing Date.  For purposes of clarification, any employee medical claims which are incurred prior to the Closing (regardless of when such claims are presented for payment) shall be claims against the bankruptcy estates of the Debtors, and not the Buyer, and the Buyer shall be responsible only for such claims which are incurred after the Closing.  All such Encumbrances and Interests of any kind or nature whatsoever (other than Permitted Liens) shall attach (effective upon the transfer of the Assets to the Buyer) to the proceeds of the Sale (the "Proceeds") with the same force, validity, priority and effect, if any, as the Encumbrances and Interests formerly had against the Assets, if any, subject to the Debtors' ability to challenge the extent, validity, priority and effect of such Encumbrances and Interests and subject to and as otherwise provided in any other order of this Court in these Chapter 11 Cases.

10.    On the Closing Date, this Order will be construed and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets or a bill of sale transferring good and marketable title in such Assets to the Buyer.  On the Closing Date, and subject to Section 365 of the Bankruptcy Code, this Order also shall be construed and constitute for any and all purposes a complete and general assignment of all rights, title and interests of the Debtors and each bankruptcy estate to the Buyer in Assigned Contracts.

11.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Buyer on the Closing Date.

12.     Except as expressly permitted by this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade, products liability and other creditors, holding Encumbrances and Interests of any kind or nature whatsoever against or in the Debtors or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated now existing or hereinafter arising), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, or the transfer of the Assets to the Buyer, hereby are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its successor or assign, its property, or the Assets, such persons' or entities' claims, Encumbrances and Interests.

13.     On the Closing Date, each of the Debtors' creditors is authorized to execute such documents and take all other actions as may be necessary to release its Encumbrances and Interests in the Assets, if any, as such Encumbrances and Interests may have been recorded or otherwise exist.

14.     The transfer of the Assets to the Buyer pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Assets, and shall vest the Buyer with all rights, title, and interests of the Debtors in and to the Assets free and clear of all Encumbrances and Interests of any kind or nature whatsoever, other than Permitted Liens and the Assumed Liabilities.

**Assumption and Assignment of Designated Assigned Contracts**

15.     Pursuant to Sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale, the Debtors' assumption and assignment to the Buyer, and the Buyer's payment of cure costs, provision of adequate assurance of future performance, and assumption on the terms set forth in the Asset Purchase Agreement, of the Assigned Contracts designated to be assigned as of the closing of the Sale is hereby approved, and the requirements of Section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

16.     Subject to paragraph 15 of this Order, the Debtors are hereby authorized and directed in accordance with Sections 105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer, effective upon the designation and assumption and assignment, the designated Assigned Contracts to be assigned free and clear of all Encumbrances and Interests of any kind or nature whatsoever (other than Permitted Liens) and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Buyer.

17.     The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer upon designation and assumption and assignment in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in Section 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to Section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by the Buyer, except as provided in the Asset Purchase Agreement and this Order.

18.     All amounts that must be paid and obligations that must be otherwise satisfied, if any, including pursuant to Sections 365(b)(1)(A) and (B) of the Bankruptcy Code, in connection with the assignment and assumption of the Assigned Contracts, including costs to obtain any consents or cure any defaults thereunder that are required to be cured pursuant to the Bankruptcy Code to effect the assignment and obtain this Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code) shall be cured by the Buyer upon designation and assumption and assignment in the Assumed Cure Amount.  All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Petition Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code) shall be cured by the Buyer upon designation and assumption and assignment in the Assumed Cure Amount.  All defaults or other obligations of the Debtors under the Assigned Contracts designated to be assigned as of the closing of the Sale arising or accruing on or after the Petition Date to the date of designation and assumption and assignment (without giving effect to any acceleration clauses or any default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code) shall be cured by the Buyer upon designation and assumption and assignment.  Except as set forth in the Asset Purchase Agreement with respect to the Assumed Cure Amount, the Buyer shall have no liability or obligation to cure Assigned Contract defaults accruing prior to the designation and assumption and assignment. Notwithstanding any language in this paragraph to the contrary, the Debtors and the Buyer shall each be responsible for all taxes, tax payments and year-end reconciliations to the extent provided in the Asset Purchase Agreement.

19.     The various formal and informal objections to the proposed Assumed Cure

Amounts set forth in the previously served Cure Notice are hereby resolved as follows:

a.    The Objection of Skip Fern Trust I to Proposed Cure Amount (D.I. 241) is resolved at an amended cure amount of $6,378.

b.    Ardent Mills, LLC's Limited Objection to Notice of (I) Possible Treatment of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto and Reservation of Rights (D.I. 248) is resolved at an amended cure amount of $79,288.95.

c.    The Objection of Scata Family Limited Partnership to Proposed Cure Amount (D.I. 249) is resolved at an amended cure amount of $40,595.74.

d.    The Whitman/682 Bedford LLC's Objection and Reservation of Rights to the Proposed Sale of the Debtors' Assets (D.I. 251) is resolved at an amended cure amount of $8,178.20.

e.    The WJG Realty Company LLC's Objection and Reservation of Rights to the Proposed Sale of the Debtors' Assets (D.I. 252) is resolved at an amended cure amount of $9,655.49.

f.    The Stop & Shop Supermarket Company LLC's Objection and Reservation of Rights to the Proposed Sale of the Debtors' Assets (D.I. 253) is resolved at an amended cure amount of $10,391.60.

g.    The Objection of IREIT Shrewsbury White City, L.L.C. to (A) Notice of (I) Possible Treatment of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto and (B) Adequate Assurance Information of Stalking Horse Purchaser (D.I. 257) is resolved at an amended cure amount of $17,589.18.

h.    The Limited Objection of Federal Realty Investment Trust and FLV Campus Plaza LP to Debtors' Motion for (I) an Order Pursuant to Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bidding Procedures and Bid Protections for the Sale of Substantially All Assets of Debtor; (B) Approving Procedures for the Assumption and Assignment or Rejection of Designated Executory Contracts and Unexpired Leases; (C) Scheduling the Auction and Sale Hearing; (D) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (E) Granting Related Relief; (II) an Order (A) Approving the Sale of the Debtors Assets Free and Clear of Claims, Liens, and Encumbrances; and (B) Approving the Assumption and Assignment of Designated Executory Contracts and Unexpired Leases; and (III) Certain Related Relief and Notice of (I) Possible Treatment of Contracts and Leases, (II) Fixing the Cure Amounts, and (III) Deadline to Object Thereto (D.I. 258) will be resolved by payment of a cure amount to be mutually agreed by the parties, and if no such agreement is reached within the designation

rights period, the parties will schedule a hearing on no less than 14 days' notice to determine the appropriate cure amount.

i.    The Limited Objection and Reservation of Rights of Landlord, Bunker Hill Mall LLC, Regarding Notice of (I) Possible Treatment of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto (D.I. 259) is resolved by the removal of the lease from the list of contracts and leases to be assumed and assigned at Closing.

j.    The Objection of TRT Kingston II LLC, TRT Braintree LLC and TRT Wareham LLC to Notice of (I) Possible Treatment of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto (D.I. 262) is resolved at an amended cure amount of $8,999.64.

k.    Certain informal comments received from Richmond Center Limited Partnership are resolved with an amended cure amount of $10,940.42.

l.    Certain informal comments received from Dedham Marketplace LLC are resolved at an amended cure amount of $11,195.62.

m.    Certain informal comments received from SAT SR Limited Partnership are resolved at an amended cure amount of $8,654.37.

n.    Certain informal comments received from DJM NNN II, LLC are resolved at an amended cure amount of $12,402.09.

o.    Certain informal comments received from The Grossman Companies are resolved at an amended cure amount of $13,344.96.

p.    Certain informal comments received from The Compass Rose Property Co. are resolved at an amended cure amount of $23,021.61.

q.    Certain informal comments received from South Dennis Acquisition Corp. are resolved at an amended cure amount of $12,873.72.

r.    Certain informal comments received from Norwood Plaza LLC are resolved at an amended cure amount of $11,370.81.

s.    Certain informal comments received from Toast, Inc. are resolved as follows:

Toast, Inc. ("Toast") and the Debtors have agreed as follows with respect to the assumption and assignment of the Merchant Agreement, dated as of December 9, 2016 (as amended by Amendment #1 to Merchant Agreement dated February 20, 2018) (the "Merchant Agreement").   The cure amount for the Merchant Agreement is $504,532.56, which shall be paid to Toast promptly following the closing of the Sale.  In addition, Toast shall be entitled (but not obligated) to retrieve all Hardware (as defined and described in the Merchant Agreement) Toast provided to the Debtors for locations that were closed prior to the date of this Order.  The Debtors shall provide Toast access to such Hardware for inspection and retrieval at mutually agreeable times.  Title to any such Hardware Toast determines to retrieve and retain shall remain with Toast.  For the avoidance of doubt, Toast shall not be obligated to retrieve any Hardware from the Debtors.

With regard to any Hardware that Toast determines to not retrieve and retain, upon Toast's written notice (email being sufficient) to the Debtors and the Buyer of such determination, title to such Hardware shall vest in the Debtors or the Buyer (as applicable), and Toast shall not have any responsibility or liability with regard to any such Hardware.

t.     Regarding the McDonald's Corporation's Limited Objection and Reservation of Rights to Notice of (I) Possible Treatment of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto (D.I. 265), as set forth on the record of the hearing, McDonald's Corporation's rights are reserved with respect to its cure amount.

20.     The Court approves the following provisions in connection with the assumption and assignment of any Contracts or Leases that may be assumed and assigned to the Buyer, or its assignee, pursuant to the Asset Purchase Agreement:

Consistent with section 365(d)(4) of the Bankruptcy Code, during the thirty (30) days after the closing (the "Closing") of the Sale (the "Designation Period"), and subject to the terms and conditions set forth in the Asset Purchase Agreement, the Buyer shall have the right, which right may be exercised at any time and from time to time, to provide written notice to the Debtors of the Buyer's election to require the Debtors to use commercially reasonable efforts to assume the Contract(s) or Lease(s) identified in the subject Assumption Notice(s) and assign same to the Buyer's designee to the extent not earlier assumed and assigned.

In the case of any Contracts and Leases (other than Excluded Asset Contracts) that the Debtors seek to assume and assign after the Sale Hearing and the Closing Date pursuant to the Stalking Horse Purchase Agreement (or the asset purchase agreement of the Buyer), within three (3) Business Days following receipt of a notification by the Buyer that a Contract or Lease is designated for assumption and assignment, the Debtors shall file with the Court a written notice of the Debtors' intent to assume and assign such Contract or Lease (an "Assumption Notice"), substantially in the form attached thereto as **Exhibit 3** to the Bidding Procedures Order with a proposed form of order.  The Debtors shall serve such Assumption Notice via first class mail on each of the following parties (the "Assumption Notice Parties"):

(i) each counterparty to any Contract or Lease (and their known counsel) to be assumed or assigned by the Debtors, (ii) the United States Trustee for the District of Delaware, (iii) counsel to the Committee, (iv) counsel to the Debtors' secured lenders, and (v) counsel to the Buyer, as applicable.

The Assumption Notice shall set forth the following information, to the best of the Debtors' knowledge: (i) the street address of the real property that is the subject of any Lease that the Debtors seek to assume and assign or a description of the Contract that the Debtors seek to assume and assign, (ii) the name and address of the affected counterparties (and their known counsel), (iii) a description of the deadlines and procedures for filing objections, if so permitted pursuant to the Designation Procedures set forth herein, to the Assumption Notice (as set forth below), (iv) any proposed cure amounts, if any, and (v) the evidence of adequate assurance of future performance under the Contracts and Leases with respect to the proposed designee, to the extent it has not been previously disclosed.

A party in interest may object to an Assumption Notice with respect to the proposed cure amount and evidence of adequate assurance of future performance contained therein regardless of whether such objection could have been raised prior to the Sale Objection Deadline.  Any such objection must be in writing and filed and served so that such objection is filed with this Court and actually received by the Debtors and the Assumption Notice Parties no later than fourteen (14) days after the date the Debtors served the applicable Assumption Notice.

If no permitted objection is timely filed and served with respect to the Assumption Notice, any non-Debtor party to such Contract or Lease shall be deemed to have consented to the cure amount set forth in such Assumption Notice and the Debtors may seek entry of the proposed order attached to such Assumption Notice.  If a permitted objection is timely filed and served on the Assumption Notice Parties in the manner specified above, unless the parties agree otherwise in writing, a hearing will be scheduled to consider that objection.  For the avoidance of doubt, any Contract or Lease set forth in an Assumption Notice that is the subject of a timely permitted objection to the cure amount may be assumed and assigned prior to resolution of such objection to the cure amount upon entry of the proposed order attached to such Assumption Notice.

21.    From and after the Closing and the payment of the appropriate Assumed Cure Amount, each non-Debtor party to an Assigned Contract hereby is forever barred, estopped, and permanently enjoined from asserting against the Debtors or the Buyer, or the property of either of them, any default existing as of the date of the Closing Date of the Sale.

22.    For the avoidance of doubt, as set forth in Section 2.5(b) to the Stalking Horse Purchase Agreement, all Designation Rights Leases (as defined in the Stalking Horse

Purchase Agreement) found on Schedule 2.5(b)(ii) to the Stalking Horse Purchase Agreement shall not be assumed and assigned as of Closing but shall be subject to the designation procedures set forth in paragraph 20 during the Designation Period.

**Additional Provisions**

23.    The consideration provided by the Buyer for the Assets under the Asset Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

24.    This Order (a) shall be effective as a determination that, upon payment by the Buyer of the Purchase Price under the Asset Purchase Agreement, on the Closing Date, all Encumbrances and Interests of any kind or nature whatsoever existing as to the Debtors or the Assets prior to the Closing Date (other than Permitted Liens) have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.  Each and every federal, state and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.  The Buyer and the Debtors shall take such further steps and execute such further documents, assignments, instruments and papers as shall be reasonably requested by the other to

implement and effectuate the transactions contemplated in this paragraph. All Encumbrances and Interests of record as of the date of this Order shall be forthwith removed and stricken as against the Assets. All entities described in this paragraph are authorized and specifically directed to strike all such recorded Encumbrances and Interests against the Assets from their records, official and otherwise.

25.      If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances and Interests in any of the Assets does not deliver to the Debtors or the Buyer prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all interests and other interests that the person or entity has or may assert with respect to any of the Assets, the Debtors and/or the Buyer are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such persons or entity with respect to any of the Assets.

26.      As specifically provided in the Asset Purchase Agreement, the Debtors will cooperate with the Buyer and the Buyer will cooperate with the Debtors, in a commercially reasonable manner, in each case to ensure that the transaction contemplated in the Asset Purchase Agreement is consummated, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the closing to facilitate such consummation as contemplated by the Asset Purchase Agreement (including, without limitation, adding such specific assets, to such documents, as may be reasonably requested by the Buyer pursuant to the terms of the Asset Purchase Agreement).

27.     Except as expressly set forth in the Asset Purchase Agreement, to the greatest extent permitted under applicable law, the Buyer shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Assets other than for the Assumed Liabilities and the Assigned Contracts to the extent provided under the Asset Purchase Agreement.  Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Asset Purchase Agreement, the Buyer shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Buyer shall have no successor liabilities to the greatest extent permitted under applicable law (including without limitation product liability with respect to any Inventory or other assets sold, shipped or delivered prior to the Closing Date) of any kind or character whether known or unknown as of the Closing Date, now existing or hereinafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, or in connection with, or in any way relating to the operation of the business prior to the Closing Date and all parties are hereby forever barred, estopped and permanently enjoined from asserting any such claims against the Buyer, its successors and assigns or against the Assets.

28.     Except for Assumed Liabilities and Assigned Contracts as set forth in the Asset Purchase Agreement, under no circumstances shall the Buyer be deemed a successor of or to the Debtors for any Encumbrances and Interests against or in the Debtors or the Assets of any kind or nature whatsoever to the greatest extent permitted under applicable law.  Except for Assumed Liabilities and Assigned Contracts and as otherwise set forth in the Asset Purchase Agreement, the sale, transfer, assignment and delivery of the Assets and the Assigned Contracts shall not be subject to any Encumbrances and Interests, and Encumbrances and Interests of any

kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtors.  All

persons holding Encumbrances and Interests against or in the Debtors or the Assets of any kind

or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently

enjoined from asserting, prosecuting, or otherwise pursuing such Interests of any kind or nature

whatsoever against the Buyer, its officers, directors, shareholders and professionals, its property,

its successors and assigns, or the Assets with respect to any Encumbrances and Interests of any

kind or nature whatsoever (other than Permitted Liens) such person or entity had, has, or may

have against or in the Debtors, their estates, officers, directors, shareholders, or the Assets.

Following the Closing Date, no holder of an Encumbrance and Interest in the Debtors shall

interfere with the Buyer's title to or use and enjoyment of the Assets and the Assigned Contracts

based on or related to such Interest, or any actions that the Debtors may take in these Chapter 11

Cases.

29.    This Court shall retain jurisdiction to enforce and implement the terms and

provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents

thereunder, except as otherwise provided therein, and of each of the agreements executed in

connections therewith in all respects, including, but not limited to, retaining jurisdiction to

(a) compel delivery of the Assets to the Buyer free and clear of Encumbrances and Interests

(other than Permitted Liens), or compel the performance of other obligations owed by the

Debtors, (b) compel delivery of the purchase price or performance of other obligations owed to

the Debtors, (c) resolve any disputes arising under or related to the Asset Purchase Agreement,

except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this

Order, and (e) protect the Buyer against (i) claims made related to any of the Excluded Liabilities

(as defined in the Asset Purchase Agreement), (ii) any claims of successor or products liability

related to the Assets or Assigned Contracts, or (iii) any claims of Encumbrances and Interests (other than Permitted Liens) asserted in the Debtors or the Assets, of any kind or nature whatsoever, and (f) require delivery of (i) any Assets or proceeds thereof by the Debtors to the Buyer or (ii) any Excluded Assets or proceeds thereof by the Buyer to the Debtors or their designee or successor.

30.     The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their respective affiliates, successors and assigns, their estates, and their creditors, the Buyer, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Encumbrances and Interests in the Assets to be sold to the Buyer pursuant to the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

31.     The failure specifically to include any particular provisions of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

32.     The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

33.     Nothing contained in any order entered in these Chapter 11 Cases subsequent to entry of this Order, nor in any chapter 11 plans confirmed in these Chapter 11 Cases, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order.

34.     This Order shall be effective and enforceable immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h), 6006(d) and any other provision of the Bankruptcy Code or Bankruptcy Rules shall not apply.

35.     The provisions of this Order are nonseverable and mutually dependent.

36.     To the extent applicable, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow the Buyer to give the Debtors any notice provided for in the Asset Purchase Agreement, and (b) to allow the Buyer to take any and all actions permitted by the Asset Purchase Agreement.

37.     To the extent a counter party to an Assigned Contract failed to timely object to a Cure Amount (as defined in the Bidding Procedures and Bidding Procedures Order), such Cure Amount shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to or denying the validity and finality of the Cure Amount at any time, and such Cure Amount, when paid, shall completely revive any Assigned Contract to which it relates.

38.     The Sale shall not be subject to any bulk sales laws.

39.     The Debtors and each other person having duties or responsibilities under the Asset Purchase Agreement or this Order, and their respective agents, representatives, and attorneys, are authorized and empowered to carry out all of the provisions of the Asset Purchase

Agreement, to issue, execute, deliver, file and record, as appropriate, the Agreement, and any related agreements, and to take any action contemplated by the Asset Purchase Agreement or this Order, and to issue, execute, deliver, file and record, as appropriate, such other contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the Asset Purchase Agreement and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the Asset Purchase Agreement and this Order and the transactions contemplated thereby and hereby.

40.     To the extent that any provision of this Order conflicts with the Asset Purchase Agreement, this Order shall control.

**Dated: January 28th, 2019**
**Wilmington, Delaware**

27

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**