# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| PGHC Liquidating, Inc., *et al.*,<br>f/k/a/ PGHC Holdings, Inc., | Case No. 18-12537 (MFW) |
| Debtors. [1] | Jointly Administered<br>**Objections Due: Sept. 19, 2019 at 4:00 p.m.**<br>**Hearing Date: Sept. 26, 2019 at 3:00 p.m.** |

**DEBTORS' MOTION FOR ENTRY OF AN INITIAL ORDER AND A FURTHER ORDER (I) ESTABLISHING PROCEDURES WITH RESPECT TO ADMINISTRATIVE AND 503(b)(9) CLAIMS AND FINAL FEE APPLICATIONS; (II) AUTHORIZING THE DEBTORS TO MAKE DISTRIBUTIONS TO CLAIMANTS HOLDING ALLOWED ADMINISTRATIVE CLAIMS AND ALLOWED 503(b)(9) CLAIMS; (III) AUTHORIZING THE DEBTORS TO ABANDON CERTAIN PROPERTY; (IV) DISMISSING THE DEBTORS' CHAPTER 11 CASES; (V) AUTHORIZING THE DEBTOR ENTITIES TO BE DISSOLVED IN ACCORDANCE WITH APPLICABLE STATE LAW; AND (VI) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of orders, substantially in the forms attached hereto (the "Initial Order," and the "Dismissal Order," respectively, and together, the "Proposed Orders"): (a) approving procedures for the filing and approval of claims and final fee applications by professionals retained in these chapter 11 cases (collectively, the "Professionals"), and providing for payment of fees incurred by Professionals

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal EIN, are as follows: PGHC Liquidating, Inc. (f/k/a PGHC Holdings, Inc.) (4262); PGH Liquidating, Inc. (f/k/a Papa Gino's Holdings Corp.) (6681); PG Liquidating, Inc. (f/k/a Papa Gino's, Inc.) (1264); PGFC Liquidating, Inc. (f/k/a Papa Gino's Franchising Corp.) (2690); PGDACS Liquidating, Inc. (f/k/a Papa Gino's/D'Angelo Card Services, Inc.) (0621); DASS Liquidating, Inc. (f/k/a D'Angelo Sandwich Shops, Inc.) (7947); PGPF Liquidating, Inc. (f/k/a Progressive Food, Inc.) (6224); DAFC Liquidating, Inc. (f/k/a D'Angelo Franchising Corporation) (8398); and PGDI Liquidating, Inc. (f/k/a Delops, Inc.) (7945). The Debtors' mailing address is 600 Providence Highway, Dedham, MA 02026.

in the Chapter 11 Cases ("Professional Fees"); (b) authorizing the payment of Allowed Administrative Claims (as defined below) and Allowed 503(b)(9) Claims (as defined below), with any excess funds remitted to the Secured Lender (as defined below); (c) authorizing, but not directing, the Debtors to abandon and destroy any and all of the books and records that were not sold as part of the Asset Sale (as defined below) or other dispositions of the Debtors' assets; (d) dismissing the Debtors' chapter 11 cases (collectively, the "Chapter 11 Cases"); (e) authorizing the Debtors to be dissolved in accordance with applicable state law and on the terms provided for in the Initial Order and Dismissal Order, respectively; and (f) providing such other related relief as is just and necessary in connection with the relief sought herein.  In support of this Motion, the Debtors respectfully represent as follows:

### PRELIMINARY STATEMENT

1.      The Debtors, the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "Committee"), and WC Financeco A LLC, the Debtors' first lien secured lender (the "Secured Lender") worked diligently from the outset of these Chapter 11 Cases to formulate and close a sale of substantially all of the Debtors' assets to preserve the Debtors' business as a going concern, save a significant number of jobs and maintain a restaurant business upon which hundreds of vendors and landlords could continue to depend. Those efforts have been successful.  The sale (the "Asset Sale") of substantially all of the Debtors' assets to WC Purchaser LLC (the "Buyer"), an affiliate of the Secured Lender, closed on February 11, 2019, resulting in the satisfaction of $20 million of the Debtors' obligations under the *Amended and Restated Credit Agreement*, dated as of June 1, 2010 (as amended or otherwise modified from time to time, the "First Lien Credit Agreement") and the *Final Order (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. 364, (II)*

*Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. 363, (III) Granting Adequate Protection Pursuant to 11 U.S.C. 361, 363 and 364* (D.I. 151) (the "DIP Order"), the payment or assumption of certain other liabilities, and the assumption and assignment of the majority of the Debtors' executory contracts and unexpired leases.

2.      Although the credit bid and assumptions of liabilities eliminated millions of dollars of claims from the Debtors' estates, the Debtors still have tens of millions of dollars of secured indebtedness.  The DIP Order recognized prepetition liens and created post-petition adequate protection liens on substantially all of the Debtors' assets, including proceeds of Avoidance Actions, in favor of the Debtors' prepetition Secured Lender and its affiliates. After investigation by the Committee, neither the Committee nor any other party challenged the Secured Lender's liens or claims.  Given the extent of the Secured Lender's liens and the magnitude of their deficiency claim, there is no reasonable prospect of distributions from any Debtor's estate to any holders of prepetition unsecured claims against the Debtors (other than prepetition claims afforded administrative priority under section 503(b)(9) of the Bankruptcy Code), and the estates do not and will not have available funds to satisfy either priority claims or general unsecured claims which have been asserted against them.

3.      The Debtors, in consultation with the Second Lender and the Committee, have explored various options to bring these Chapter 11 Cases to a conclusion, and believe, after making appropriate considerations, that a dismissal of these Chapter 11 Cases is the most expeditious and cost-effective mechanism to wind down the Debtors' affairs.  In reaching this conclusion, the Debtors determined that a dismissal would not negatively impact creditors (as compared to a chapter 11 plan or conversion to chapter 7) because there are no remaining assets of any value available for distributions to unsecured creditors and insufficient funds to

support the administrative costs of pursuing anything but a prompt exit from bankruptcy.

4.    The Debtors are unable to pursue a confirmable chapter 11 plan because they do not have sufficient assets available to pay all administrative and priority creditors in full, nor a credible path to securing a non-insider, impaired consenting class.  The Debtors considered exiting the Chapter 11 Cases through a chapter 7 process but believe that the additional chapter 7 trustee's fees, commissions and related costs would make any recovery to priority and unsecured creditors similarly unlikely, if not impossible.  In seeking approval of the dismissal of these Chapter 11 Cases pursuant to the Initial Order and Dismissal Order, respectively, the Debtors are mindful of the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017) and the propriety of "structured" dismissals.  Accordingly, the Initial Order provides for distributions that comply with sections 507(a) and 726 of the Bankruptcy Code.

5.    Therefore, with the support of the Committee and the Secured Lender, the Debtors (a) propose making payments to holders of (i) valid, allowed post-petition and pre-closing administrative expenses (the "Allowed Administrative Claims"), and (ii) valid, allowed claims arising under section 503(b)(9) of the Bankruptcy Code (the "Allowed 503(b)(9) Claims"), (b) request the dismissal of the Chapter 11 Cases and related relief on the terms set forth in the Proposed Orders attached hereto, and (c) request certain related relief, as set forth in this Motion.

## JURISDICTION AND VENUE

6.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28

U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory bases for the relief requested herein are pursuant to sections 105(a), 349, 363(b)(1), 554(a), 726, and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 1017, 2002, 6007 and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 1017-2.

## BACKGROUND

### A.      General Background

9.      On November 5, 2018 (the "Petition Date"), the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court.  No trustee or examiner has been appointed in these cases.

10.     On November 16, 2018, the United States Trustee for the District of Delaware appointed the Committee (D.I. 81).  The Debtors continue to administer these chapter 11 cases as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

11.     The Debtors were owner-operators of quick-service restaurants in New England under the Papa Gino's and D'Angelo Grilled Sandwiches brands.

12.     Additional detail regarding the Debtors, their business, the events leading to commencement of these cases and the facts and circumstances supporting the relief requested

herein is set forth in the *Declaration of Corey D. Wendland in Support of First Day Relief* (D.I. 4).

13.    On January 28, 2019, the Court entered the *Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Interests, Claims, and Encumbrances; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Certain Related Relief* (D.I. 288), authorizing the Debtors to sell substantially all of their assets (the "Sale") to the Lender's designee, the Buyer, pursuant to the terms of the Stalking Horse APA, as amended.  The Sale closed on February 11, 2019.

14.    On March 19, 2019, the Court entered the *Order (I) Establishing Certain Bar Dates for Filing Prepetition Claims and Administrative Expense Claims, and (II) Granting Related Relief, Including Notice and Filing Procedures* (D.I. 409) establishing the bar dates for general and administrative claims as thirty days from when the Debtors serve notice of the bar dates (the "Bar Date").

15.    Since the Asset Sale closed, the Debtors have focused their efforts on matters under the transition services agreement and designation rights associated with the Sale, and have now transferred all of the leases and contracts subject to the designation rights.  The Debtors have also analyzed and evaluated the currently known universe of administrative and priority claims against their estates and worked on developing a wind-down budget to determine whether a liquidating chapter 11 plan is practicable under the circumstances. Additionally, the Committee's professionals have evaluated whether certain claims or causes of action should be preserved and pursued in connection with a potential plan.

16.    Based on these analyses, the Debtors, in consultation with the Committee and

the Secured Lender, do not believe that a plan of liquidation is practicable

    **B.**    **Background Regarding Prepetition Debt, Post-Petition Debt, and the Asset Sale**

        **1.**  **Prepetition Debt**

17.     As of the Petition Date, the substantial majority of the Debtors' liabilities consisted of funded indebtedness.  None of the Debtors' funded indebtedness or equity is or was publicly offered for public sale or publicly traded.  The Debtors' capital structure comprises the following principal components:

18.     Debtor PG Liquidating, Inc., (f/k/a Papa Gino's, Inc.) is the borrower under, and the remaining Debtors are each guarantors under, that the First Lien Credit Agreement.  As amended, the First Lien Credit Agreement comprises: (i) a revolver commitment in the maximum principal amount of $5,000,000 ("Revolver Commitment A"); (ii) a revolver commitment in the maximum principal amount of $2,000,000 ("Revolver Commitment B"); and (iii) a term loan commitment in the maximum principal amount of $10,000,000 ("Term Loan A").  As of the Petition Date, the outstanding balances due under Revolver Commitment A, Revolver Commitment B and Term Loan A were $6,927,302, $1,552,906, and $10,000,000, respectively, and aggregating to $18,480,208 (collectively, the "First Lien Debt").  The Debtors' obligations under the First Lien Credit Agreement matured on June 1, 2017.  The Debtors failed to repay such obligations when due, and, therefore, were and are in default under the First Lien Credit Agreement.  The Debtors have been operating without a formal forbearance agreement since that time.

19.     Pursuant to that certain Eighth Amendment to Amended and Restated Credit Agreement entered into as of October 23, 2018, the Debtors and the First Lien Lender agreed to amend the First Lien Credit Agreement to, among other things, add Revolver Commitment

B to provide the Debtors with the funding necessary to, among other things, bridge them to the filing of these Chapter 11 Cases.

20.     Pursuant to the Asset Sale, $18.5 million of the First Lien Debt was satisfied.

**(ii)     Second Lien Debt**

21.     Debtor PG Liquidating, Inc., (f/k/a Papa Gino's, Inc.) is the borrower under, and the remaining Debtors are each guarantors under, that certain Second Lien Term Loan Agreement dated as of July 16, 2013 (as amended, restated, supplemented or otherwise modified from time to time, the "Second Lien Credit Agreement"). The Second Lien Credit Agreement comprises a term loan in the original principal amount of $28,000,000. Pursuant to that certain Assignment and Acceptance and Successor Agent Agreement entered into as of June 29, 2018, by and among WC Financeco B LLC, as assignee, and THL Credit, Inc., THL Credit Greenway Fund II LLC, and United Insurance Company of America, as assignors, WC Financeco B LLC (an affiliate of the Secured Lender and the Buyer) purchased and assumed all of the assignors' rights and obligations under the Second Lien Credit Agreement, including as agent and lender(s) thereunder (in such capacities, the "Second Lien Lender").

22.     The Debtors' obligations under the Second Lien Credit Agreement matured on December 1, 2017. The Debtors failed to repay such obligations when due, and, therefore, were and are in default under the Second Lien Credit Agreement. The Debtors have been operating without a formal forbearance agreement since that time.

23.     As of the Petition Date, the outstanding balance due under the Second Lien Credit Agreement was approximately $34,218,209 (the "Second Lien Debt"). None of this indebtedness was satisfied in connection with the Asset Sale.

### (iii)    Mezzanine Debt

24.     Debtor PG Liquidating, Inc., (f/k/a Papa Gino's, Inc.) is the issuer under, and the remaining Debtors are each guarantors under, that certain Note Purchase Agreement dated as of June 1, 2010 (as amended, restated, supplemented, or otherwise modified from time to time, the "Note Purchase Agreement") for the issuance of $27,133,279 of 16% Senior Subordinated Notes due December 1, 2016 (the "Notes"). The Notes are held by Hartford Life Insurance Company and Brookside Mezzanine Fund II, L.P. The Notes matured on June 1, 2018. As of the Petition Date, the outstanding balance due under the Notes is $39,853,863.64 (the "Mezzanine Debt"). None of this indebtedness was satisfied in connection with the Asset Sale.

### (iv)    Other Liabilities

25.     As of the Petition Date, the Debtors estimate that their unsecured debt (apart from the Mezzanine Debt) aggregates approximately $9 million, comprising primarily trade debt, lease obligations and maintenance and repair obligations. In addition, the Debtors have filed an omnibus motion to reject the leases for 95 closed restaurant locations (comprising the 92 locations closed on November 4, 2018, and 3 locations closed previously). The Debtors anticipate that lessors for such leases may file or assert lease rejection damages claims. A majority of the prepetition unsecured debt (apart from the Mezzanine Debt and any rejection damages claims) was satisfied either in connection with certain "first-day" relief regarding critical vendors or in connection with assumptions and assignments of leases and contracts as part of the Asset Sale.

### 2.    Post-Petition Debt

26.     On November 30, 2018, the Court entered the DIP Order, which provided up to an aggregate principal amount not to exceed $13.8 million from the Secured Lender on

substantially the same terms as loans under the First Lien Credit Agreement.  The funding was provided to allow the Debtors to market and sell the Debtors' business as a going concern in an effort to maximize the estates' value for the benefit of the Debtors' stakeholders.

27.     Pursuant to paragraph 24 of the DIP Order, the Debtors released the Secured Lender from "any and all claims, demands, damages, liabilities, responsibilities, disputes, remedies, actions, causes of action, indebtedness and obligations, of every type" that arose on or prior to the date the DIP Order.  These releases were subject to the right of the Committee and parties in interest to challenge such releases by commencing an action against the Secured Lender by January 15, 2019.  No action was commenced by any party against the Secured Lender.

28.     Additionally, pursuant to paragraph 27 of the DIP Order, the Secured Lender agreed to fully fund certain amounts, including (a) accrued but unpaid and allowed administrative expenses incurred in the ordinary course of business up until the closing of the Asset Sale on February 11, 2019; (ii) accrued but unpaid and allowed post-petition stub rent (i.e., rent incurred for premises for the period from November 5, 2018 through November 30, 2018); (iii) accrued but unpaid and allowed claims arising under section 503(b)(9) of the Bankruptcy Code; (iv) fees payable to the United States Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code; and (v) accrued but unpaid and allowed professional fees incurred, subject in all cases to the budget; and (vi) $200,000 to wind down the Debtors' estates following the sale closing.

29.     The Debtors are relying on paragraph 27 of the DIP Order for the authority to have the Allowed Administrative Claims and Allowed 503(b)(9) Claims paid prior to the dismissal of these Chapter 11 Cases.

### 3. The Asset Sale

30.     On November 30, 2018, the Court entered an order (the "Bidding Procedures Order") (D.I. 150), establishing bidding and auction procedures, approving the proposed expense reimbursement and break-up fee to the Buyer, an affiliate of the Secured Lender, scheduling an auction and sale hearing for the Asset Sale, and establishing designation procedures for noticing and determining cure amounts for executory contracts and unexpired leases (the "Designation Procedures").

31.     In accordance with the procedures approved in the Bidding Procedures Order, the Debtors conducted a marketing process in an effort to maximize the value of the Debtors' estates.  Unfortunately, no parties submitted higher and better bids than that of the stalking horse bidder, the Buyer.

32.     On January 28, 2019, the Court entered the *Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Interests, Claims, and Encumbrances; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Certain Related Relief* (D.I. 288), approving the Asset Sale to the Buyer.

33.     On February 11, 2019, the Asset Sale closed and substantially all of the assets of the Debtors' estates were transferred to the Buyer.  The Buyer and the Debtors entered into a transition services agreement effective as of February 11, 2019, governing the Debtors operation of the contracts and leases remaining with the Debtors during the designation period as set forth in the approved Designation Procedures.

34.     On July 31, 2019, the Court approved (D.I. 581) the final designation and assumption and assignment of the contracts and leases to the Buyer in accordance with the

Designation Procedures.

### 4.   The Bar Date Order

35.     On March 19, 2019 the Court entered the *Order (I) Establishing Certain Bar Dates for Filing Prepetition Claims and Administrative Expense Claims, and (II) Granting Related Relief, Including Notice and Filing Procedures* (D.I. 409) (the "<u>Bar Date Order</u>") setting the Bar Dates.  The Bar Dates for both (1) claims asserted under section 503(b)(9) of the Bankruptcy Code for goods delivered and received by any of the Debtors within 20 days of the Petition Date (the "<u>503(b)(9) Bar Date</u>") and (2) unpaid administrative expense claim against any of the Debtors arising on or after the Petition Date and through and including the date of the service of a bar date notice (the "<u>Administrative Claim Bar Date</u>"); were set at thirty (30) days after service of the Bar Date Notice (as such term is defined in the Bar Date Order).

36.     To ensure that all known Allowed Administrative Claims and Allowed 503(b)(9) Claims are paid prior to the dismissal of these Chapter 11 Cases, the Debtors are sending out the Bar Date Notice to all creditors contemporaneously with the Notice of this Motion.

### C.     The Debtors' Books and Records

37.     As of the Petition Date, the Debtors maintained voluminous books and records, including, without limitation: (a) accounting documents; (b) bank documents; (c) corporate governance documents; (d) documents related to contracts, leases and other contractual agreements of the Debtors; (e) insurance documents; (f) human resources and other related employment documents; (g) documents related to the Chapter 11 Cases; (h) customer lists; and (i) other electronic documents.  Pursuant to the Asset Sale, substantially all such books and records pertaining to the Debtors have been transferred to the Buyer.  To the extent that any

books and records remain with the Debtors (collectively, the "<u>Books and Records</u>"), the continued preservation of such Books and Records would be a cost and burden to the Debtors' estates, and the destruction or abandonment of such Books and Records is necessary for the resolution of the Chapter 11 Cases.  Because the Debtors do not have any ongoing operations—and because the process of reconciling claims against the Debtors will be complete or otherwise provided for upon the date of the dismissal of these Chapter 11 Cases— the abandonment and destruction of such Books and Records would not be prejudicial to the Debtors' stakeholders.  The Debtors accordingly seek approval of the abandonment and destruction of any remaining Books and Records in their possession pursuant to this Motion.

### D.    Other Administrative Matters

38.    On November 28, 2018, the Court entered that certain *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (D.I. 134) (the "<u>Interim Compensation Order</u>"), pursuant to which the Court approved procedures governing applications for and payments of fees and expenses requested by Professionals.

<u>**RELIEF REQUESTED**</u>

39.    By this Motion, the Debtors request entry of: (a) the Initial Order (i) establishing procedures for payments to holders of Allowed Administrative Claims and Allowed 503(b)(9) Claims, which such claims will be identified in a distribution schedule to be filed on the docket in these Chapter 11 Cases prior to dismissal thereof; (ii) establishing procedures for the payment of Professional Fees; and (iii) authorizing the abandonment and destruction of Books and Records not sold to the Buyer or otherwise previously addressed; and (b) the Dismissal Order (upon filing of a certification of counsel stating that the conditions precedent to dismissal as described in this Motion have been met) dismissing the Chapter 11 Cases pursuant

to section 1112(b) of the Bankruptcy Code.  For the avoidance of doubt, the steps taken pursuant to the Initial Order shall be made after the Debtors pay all U.S. Trustee fees and pay approved Professional Fees.  To the extent that there are any assets remaining with the estates upon the payment of Allowed Administrative Claims, Allowed 503(b)(9) Claims, and allowed Professional Fees, such assets shall be remitted to the Secured Lender, on account of their prepetition and post-petition secured claims and superpriority administrative claims granted by the DIP Order.

## BASIS FOR RELIEF REQUESTED

### A.    These Chapter 11 Cases Must Be Dismissed if the Elements for "Cause" Are Shown Under Section 1112(b)(4) of the Bankruptcy Code

40.    Upon the request of a party in interest, § 1112(b)(1) of the Bankruptcy Code provides that, absent unusual circumstances, a court "shall" dismiss a chapter 11 bankruptcy case (or convert such case to a case under chapter 7) "for cause." *See* 11 U.S.C. § 1112(b)(1). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") changed the statutory language with respect to conversion or dismissal from permissive to mandatory.  *See* H.R. Rep. No. 109-31(I), at 442, *reprinted in* 2005 U.S.C.C.A.N. 88, 94 (stating that the Act "mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause, absent unusual circumstances."); *see also Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.)*, 374 B.R. 556 (Bankr. M.D. Pa. 2007) (stating that the amendments to section 1112 limit the court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause); *accord In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice, and no discretion, in that it 'shall'

dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4).").  For reasons more fully explained below, the Debtors submit that the Court should dismiss the Chapter 11 Cases because cause exists.  Further, dismissal (and not conversion to a case under chapter 7) is in the best interests of the Debtors, their creditors, and their estates.

**B.     Cause Exists to Dismiss the Chapter 11 Cases Because the Debtors Have Ceased Business Operations and Will Have Insufficient Assets to Confirm a Plan**

41.     Section 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of 16 grounds for dismissal.  11 U.S.C. § 1112(b)(4)(A)-(P).  *See In re Gateway Access Solutions*, 374 B.R. at 561 ("Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should 'consider other factors as they arise.'") (quoting *First Jersey Nat'l Bank v. Brown (In re Brown)*, 951 F.2d 564, 572 (3d Cir. 1991)); *In re 3 Ram, Inc.*, 343 B.R. at 117 ("While the enumerated examples of 'cause' to convert or dismiss a chapter 11 case now listed in § 1112(b)(4) have changed under BAPCPA, the fact that they are illustrative, [and] not exhaustive has not.") (citation omitted).

42.     One statutory basis to dismiss a case is where a party in interest shows that there has been a "loss" or "diminution" of value of the estate and (b) the debtor does not have a "reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 111(b)(4)(A); *see also In re Photo Promotion Assocs., Inc.*, 47 B.R. 454, 458 (Bankr. S.D.N.Y. 1985); *Clarkson v. Cooke Sales & Service Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) (dismissal is warranted where "the absence of financial data and certain sources of income for the [debtors] indicate[d] the absence of a reasonable likelihood of rehabilitation").  Further, the dismissal of a chapter 11 case has been found appropriate where "a feasible plan is not possible." *In re 3*

*Ram*, 343 B.R. at 117-18. "If [a] chapter 11 [debtor] cannot achieve . . . . reorganization within the statutory requirements of the Bankruptcy Code, then there is no point in expending estate assets on administrative expenses . . . ." *Id.* at 118 (citing, *inter alia*, *In re Brown*, 951 F.2d at 572).

43.     A chapter 11 plan is not feasible in these cases.  The Debtors liquidated substantially all of their assets in connection with the Asset Sale and no longer conduct business.  Post-closing, the Debtors' estates existed solely to (i) meet the Debtors' obligations under the asset purchase agreement and transition services agreement approved in connection with the Asset Sale, and (ii) effectuate an orderly exit from these Chapter 11 Cases.  While doing so, the estates continue to accrue Professional Fees and U.S. Trustee fees, which have been addressed pursuant to the DIP Order.  There is no longer a business to reorganize or assets to distribute, and thus no reason (or funds available) to pursue a plan of reorganization or liquidation.  Accordingly, cause exists to dismiss the Chapter 11 Cases pursuant to section 1112(b)(4) of the Bankruptcy Code and relevant case law.

**C.     Dismissal is in the Best Interests of the Debtors' Creditors and Their Estates**

44.     Once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court must then evaluate whether dismissal is in the best interests of the debtor's creditors and of the estate.  *See, e.g.*, *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert.").  A variety of factors demonstrate that it is in the best interest of the Debtors' estates and their creditors to dismiss the Chapter 11 Cases.

45.     *First*, a dismissal of a chapter 11 bankruptcy case meets the "best interests of

creditors" test where a debtor has nothing to reorganize and the debtor's assets are fixed and liquidated. *See Camden Ordinance Mfg. Co. of Ark., Inc. v. U.S. Trustee (In re Camden Ordnance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 799 (E.D. Pa. 2000) (reorganization to salvage business which ceased business was unfeasible); *Royal Trust Bank, N.A. v. Brogdon Inv. Co. (In re Brogdon Inv. Co.)*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (court dismissed chapter 11 proceeding in part where there was "simply nothing to reorganize" and no reason to continue the reorganization). The Debtors have nothing left to reorganize because substantially all of their assets and operations were transferred to the Buyer upon the closing of the Asset Sale, and the Debtors have insufficient unencumbered cash to make distributions to creditors pursuant to a chapter 11 plan or upon conversion of the Chapter 11 Cases to chapter 7.

46.      *Second*, courts have found that dismissal is in the "best interests of creditors" where an interested party, other than the debtor, supports the dismissal of the debtor's chapter 11 case. *See Camden Ordinance*, 245 B.R. at 798; *In re Mazzocone*, 183 B.R. 402, 414 (Bankr. E.D. Pa. 1995), *aff'd*, 200 B.R. 568 (E.D. Pa. 1996) (factors weighed more heavily in favor of dismissal of chapter 11 case rather than conversion to chapter 7 where debtor and U.S. Trustee both favored dismissal). Here, the Buyer, the Committee, and the Secured Lender, as the major remaining stakeholders, support the proposed dismissal.

47.      *Third*, a court may find dismissal to be in the "best interests of the creditors" where a debtor demonstrates the ability to oversee its own liquidation. *See Camden Ordinance*, 245 B.R. at 798; *Mazzocone,* 183 B.R. at 412 ("Only when a Chapter 11 debtor has no intention or ability to . . . perform its own liquidation . . . should a debtor be permitted to remain in bankruptcy . . . ."). Here, the Debtors have already liquidated their assets and they

are positioned to satisfy all Allowed Administrative Claims and Allowed 503(b)(9) Claims, in full, prior to dismissing the Chapter 11 Cases. Accordingly, the Debtors have demonstrated their ability to oversee their own liquidation, to the extent this factor applies.

48.    *Fourth*, and finally, dismissal is appropriate where, as here, it will maximize the value of the Debtors' estates because the alternative—conversion to a chapter 7 liquidation and appointment of a trustee—is (a) unnecessary and would provide no benefit to creditors and (b) would impose significant additional administrative costs upon the Debtors' estates without any meaningful source of funds to satisfy such costs.

49.    Under the circumstances, a chapter 7 trustee would have extremely limited funds to satisfy additional claims arising after conversion to cases under chapter 7 of the Bankruptcy Code. As noted earlier, substantially all of the Debtors' assets have been sold to the Buyer pursuant to the Asset Sale. The Debtors have further determined that, given the Secured Lender's liens on Avoidance Actions, their superpriority claim in excess of $20 million, and their deficiency claim, additional marketing or efforts to dispose of any remaining assets— consisting of a few hundred thousand dollars of cash and certain potential causes of action not sold in the Asset Sale—would be unlikely to result in a return for the Debtors' prepetition priority or unsecured creditors. As a result, such creditors would not receive greater recoveries (and certain creditors and stakeholders could possibly fare worse) in a chapter 7 liquidation. For these reasons, the Debtors submit that a dismissal pursuant to section 1112 of the Bankruptcy Code is in the best interests of the Debtors' creditors and their estates.

### D.    The Court Should Establish a Procedure to Approve Professional Fees

50.    In connection with winding down the Debtors' estates and the dismissal of the Chapter 11 Cases, and notwithstanding any provisions to the contrary in the Interim

18

Compensation Order, the Debtors seek the Court's approval of procedures for the final payment of Professional Fees and expenses incurred by Professionals on behalf of the Debtors' estates throughout the Chapter 11 Cases.

51.    Specifically, the Debtors request that the Court allow the Debtors to set a deadline for all Professionals to file final requests for allowance and payment of all fees and expenses incurred during the Chapter 11 Cases (collectively, the "Final Fee Applications") at twenty-one (21) days (the "Final Fee Application Deadline") after the Debtors serve a notice of final fee hearing (the "Notice of Final Fee Hearing") on all Professionals retained in the Chapter 11 Cases.  Permitting the Debtors this flexibility will enable the Professionals to finish reconciling and objecting, if necessary, to any filed claims requesting administrative expense status or section 503(b)(9) priority that either should not be classified as such or should not be allowed in the filed amount, prior to the final omnibus fee hearing on Professional Fees (the "Final Fee Hearing").  The Notice of Final Fee Hearing will also contain the date and time of the Final Fee Hearing received from the Court.  The Debtors further request that any objections to the Final Fee Applications be filed and served on counsel for the Debtors and such applicable Professional by 4:00 p.m.  (prevailing Eastern Time) no later than fourteen (14) days after the Final Fee Application Deadline.

52.    Courts in this jurisdiction have granted similar relief in the context of dismissals. *See, e.g., In re RM Wind-Down Holdco LLC*, Case No. 18-11795-MFW (Bankr. D. Del. Apr. 30, 2019) [D.I. 635]; *In re The Wet Seal, LLC*, Case No. 17-10229-CSS (Bankr. D. Del. Mar. 19, 2019) [D.I. 1006]; *In re The Bon-Ton Stores, Inc.*, Case No. 18-10248-MFW (Bankr. D. Del. Feb. 1, 2019) [D.I. 1436]; *In re Quantum Foods, LLC*, Case No. 14-10318-KJC (Bankr. D. Del. Apr. 6, 2018) [D.I. 1798]; *In re Sunco Liquidation, Inc.*, No. 17-10561-KG (Bankr. D.

Del. Aug. 18, 2017) [D.I. 706].

### E. The Proposed Distributions Comply with Applicable Law

53. Following the payment of allowed Professional Fees pursuant to the Final Fee Applications and the calculation and reservation of U.S. Trustee fees, the Debtors intend to pay Allowed Administrative Claims and Allowed 503(b)(9) Claims in full, and remit any remaining funds to the Secured Lender.

54. The proposed distributions comply with applicable law governing distributions of estate property in connection with a dismissal. The Supreme Court has acknowledged that structured dismissals, which approve distributions to creditors, among other things, are "increasingly common." *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979 (2017). Such final distribution schemes "ordered in connection with the dismissal of a Chapter 11 case," however, "cannot, without the consent of the affected parties, deviate from the basic priority rules" contained within the Bankruptcy Code. *Id*. at 978. In other words, a debtor may not use a dismissal as a means to distribute assets to a favored class of "low-priority general unsecured creditors" while "skipping" a disfavored class that would otherwise be entitled to priority of payment under a plan of liquidation. *See id*. As it applies here, the Bankruptcy Code requires distributions first be made to holders of allowed secured claims (from the property or proceeds of such property on which they hold liens), and then administrative expenses allowed under section 503(b) of the Bankruptcy Code. *See* 11 U.S.C. §§ 507(a), 724. The Initial Order provides for distributions that the Secured Lender has consented to and are otherwise strictly compliant with the priority scheme set forth in sections 507(a), 724, and 726 of the Bankruptcy Code. The Debtors, therefore, submit that the relief requested herein is consistent with the mandate set forth in *Jevic*.

**F.    The Court Should Authorize the Debtors to Abandon and Destroy the Books and Records and Make Payments Necessary in Connection Therewith**

55.      A debtor-in-possession is authorized, upon notice and a hearing, to abandon estate property that is of little value to the estate or is otherwise burdensome to maintain, pursuant to section 554(a) of the Bankruptcy Code and Bankruptcy Rule 6007.   As one bankruptcy court has noted, if a debtor "feels an asset is of inconsequential value and benefit to the estate *or* that it is 'burdensome to the estate,' [the debtor] may abandon it." *Reich v. Burke (In re Reich)*, 54 B.R. 995, 1004 (Bankr. E.D. Mich. 1985).

56.      Here, the Debtors request that the Court authorize, but not direct, the Debtors to abandon and destroy the Books and Records pursuant to sections 105(a) and 554 of the Bankruptcy Code, and Bankruptcy Rule 6007, and to make all payments necessary to effectuate such destruction.   As previously discussed, the Debtors have sold substantially all of their assets through the Asset Sale, no longer have an operating business, and have largely wound down their affairs.   A substantial portion of their Books and Records were transferred to the Buyer as part of the Asset Sale.   To the extent any Books and Records are retained, they will be of no value to the Debtors after dismissal of the Chapter 11 Cases.   For those reasons, the Debtors submit that they should not incur the potentially significant costs associated with maintaining and storing Books and Records that have no value to their estates, and they should be authorized to abandon and destroy, as applicable, such Books and Records.

**G.    The Court Should Authorize, but Not Require, Dissolution of the Debtors**

57.      Because the Debtors have sold substantially all of their assets and ceased operations, the Debtors intend for their corporate entities to be dissolved as soon as reasonably

practicable upon entry of the Dismissal Order.   Courts in this jurisdiction have previously authorized the dissolution of debtors by court order in connection with the dismissal of a chapter 11 case, in accordance with applicable state law.   *See, e.g., In re RM Wind-Down Holdco LLC*, Case No. 18-11795-MFW (Bankr. D. Del. Apr. 30, 2019) [D.I. 635]; *In re Quantum Foods, LLC*, Case No. 14-10318-KJC (Bankr. D. Del. Apr. 6, 2018) [D.I. 1798]; *In re Sunco Liquidation, Inc.*, Case No. 17-10561-KG (Bankr. D. Del. Aug. 18, 2017) [D.I. 706]; *In re TAH Windown, Inc.*, Case No. 16-11599-MFW (Bankr. D. Del. Jan. 13, 2017) [D.I. 408]; *In re Hospitality Liquidation I, LLC*, Case No. 13-12740-BLS (Bankr. D. Del. Jan. 5, 2015) [D.I. 447].

58.     It is appropriate and necessary for the Court to authorize the dissolution of the Debtors.  The Debtors have no further business to conduct and no other purpose in remaining active as corporate entities in their respective jurisdictions.  The Debtors may incur additional taxes and statutory fees owing to their continued corporate existence absent their prompt dissolution.  Accordingly, it is in the best interests of the Debtors' estates for the Debtors to dissolve as soon as practicable following entry of the Dismissal Order.

### H.     All Prior Releases, Stipulations, Settlements, Rulings, Orders and Judgments Should Remain Binding and Should Continue To Have Full Force and Effect

59.     The dismissal of a chapter 11 case ordinarily vacates certain orders previously entered by the bankruptcy court and restores parties to the prepetition status quo. *See* 11 U.S.C. § 349(b).  A bankruptcy court may, however, "for cause, order[] otherwise . . . ." *Id.* Courts in this jurisdiction have regularly maintained the enforceability of orders approving sales, releases and settlements, after a dismissal, notwithstanding section 349 of the Bankruptcy Code.  *See, e.g., In re RM Wind-Down Holdco LLC*, Case No. 18-11795-MFW

(Bankr. D. Del. Apr. 30, 2019) [D.I. 635]; *In re Sunco Liquidation, Inc.*, Case No. 17-10561-KG (Bankr. D. Del. Nov. 6, 2017) [D.I. 865]; *In re Old Towing Co.*, Case No. 17-10249-LSS (Bankr. D. Del. May 30, 2017) [D.I. 381]; *In re TAH Windown, Inc.*, Case No. 16-11599-MFW (Bankr. D. Del. Jan. 13, 2017) [D.I. 408].

60.      In these cases, the Debtors have sold substantially all of their assets to the Buyer. Following the Asset Sale, the Debtors pursued an orderly wind-down of these Chapter 11 Cases, including evaluating and objecting to various claims, assuming and assigning various executory contracts and unexpired leases, and disposing of remaining estate property.  Given all of these facts and circumstances, ample cause exists to allow all prior orders, releases (including, without limitation, all releases granted to the Secured Lender and any other Releasee (as defined in the DIP Order) through the DIP Order), stipulations, settlements, rulings, and judgments entered by the Court in connection with the Chapter 11 Cases to be given continued effect, notwithstanding the requested dismissal, unless otherwise provided by a subsequent stipulation with the same party or parties.

### I.      The Certification Process and the Request for Entry of Final Dismissal Order is Reasonable Under the Circumstances

61.      As soon as reasonably practicable following the filing of a certification of counsel stating that the conditions precedent to dismissal have been met (the "Certification"), the Debtors request that the Court enter the Dismissal Order, substantially in the form submitted herewith.  Among other things, the Certification will verify that: (a) all quarterly fees of the U.S. Trustee owed in connection with the Chapter 11 Cases have been paid in full and all Monthly Operating Reports have been filed, (b) the Professional Fees incurred in the Chapter 11 Cases have been approved on a final basis (to the extent applicable) and paid in full, and (c) all Allowed Administrative Claims and Allowed 503(b)(9) Claims have been paid

in full.  The Dismissal Order will dismiss the Chapter 11 Cases immediately upon entry.

62.     The Debtors intend to serve the Certification on the U.S. Trustee and all entities that have requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"), but will not send the Certification to all of the Debtors' creditors and equity holders and parties in interest, as such parties will receive reasonable notice of the proposed dismissal through the notice of this Motion requesting such dismissal.

### NOTICE

63.     A copy of this Motion and notice of the hearing thereon are being sent to (i) the Notice Parties; (ii) holders of Allowed 503(b)(9) Claims; and (iii) holders of Allowed Administrative Claims.

64.     In addition, the Debtors are providing the notice of this Motion by first-class United States Mail to all of the Debtors' creditors and equity holders, as provided in Bankruptcy Rule 2002(a)(4).   This notice includes specific information regarding how to obtain a copy of this Motion free of charge and the procedures for filing objections to this Motion.  In addition, this notice will be accompanied by a notice of the 503(b)(9) Bar Date and the Administrative Claim Bar Date in accordance with the Bar Date Order to ensure that all known Allowed Administrative Claims and Allowed 503(b)(9) Claims are paid prior to the dismissal of these Chapter 11 Cases.  The Debtors submit that, under the circumstances, no other or further notice is necessary.

### CONCLUSION

WHEREFORE the Debtors respectfully request entry of (i) the Initial Order, granting certain of the relief requested herein, (ii) the Dismissal Order, upon filing of the Certification, and (iii) such other and further relief as is just and proper.

Dated:  September 4, 2019          MORRIS, NICHOLS, ARSHT & TUNNELL LLP
        Wilmington, Delaware

                                   */s/ Daniel B. Butz*
                                   Derek C. Abbott (No. 3376)
                                   Matthew B. Harvey (No. 5186)
                                   Eric W. Moats (No. 6441)
                                   1201 N. Market Street, 16th Floor
                                   P.O. Box 1347
                                   Wilmington, Delaware 19899-1347
                                   Telephone: (302) 658-9200
                                   Facsimile: (302) 658-3989
                                   dabbott@mnat.com
                                   mharvey@mnat.com
                                   emoats@mnat.com

                                   *Counsel to the Debtors and Debtors in Possession*